LINWOOD H. DALLAS, PLAINTIFF AND RESPONDENT, v. CITY OF SEA ISLE CITY, DEFENDANT AND APPELLANT.

Argued March 14, 1913—Decided June 18, 1913.

1. Where there are material facts in the case, depending upon the weight of evidence and the credibility of witnesses, which are in dispute, and the proper inferences to be drawn from the evidence are not certain, necessary, or undisputed, a verdict cannot be lawfully directed.

2. Where as by statute (*Crimes act*, § 32, *Pamph. L.* 1907, *p.* 292), it is made a misdemeanor for any member of city council to be directly or indirectly concerned in any agreement or contract for any improvement at the public expense, or to be directly or indirectly interested in furnishing any goods, supplies or property of any kind to the city, the city is not liable even when by the execution of the prohibited contract benefit has accrued to it.

On appeal from the Cape May Circuit Court.

For the appellant, *Harrison H. Voorhees.*

For the respondent, *Thompson & Smathers.*

The opinion of the court was delivered by

TRENCHARD, J. This action was brought in the Cape May Circuit Court by Linwood H. Dallas against the city of Sea Isle City, on a *quantum meruit* for work of teams used in grading a city street.

The defence was that the plaintiff was really the agent of his father, Joseph Dallas, who was a member of the common council of Sea Isle City at the time the work was contracted for and done, and whose vote was necessary to make the contract.

At the trial the learned trial judge directed a verdict for the plaintiff, and from the consequent judgment the defendant appeals pursuant to the Practice act, 1912.

We are of opinion that such direction was erroneous.

The trial judge based his action in directing the verdict upon two grounds—*first,* that there was no evidence tending to show that Joseph Dallas was the principal, and *secondly,* even though Joseph Dallas was the principal, the plaintiff was entitled to recover on the *quantum meruit.*

The direction of the verdict cannot be sustained upon the first ground. The driver of one of the teams engaged upon the work in question testified that he was employed by Joseph Dallas, and was paid by him with his check. Another teamster testified to the same effect. Moreover, it appeared that the city order for the only money paid on account of the work was drawn to L. H. Dallas, the plaintiff, and by him endorsed "L. H. Dallas. For deposit to the credit of Joseph Dallas." Such evidence certainly tended to show that Joseph Dallas was really the principal, and, even though he testified that such was not the fact, that question should have been submitted to the jury. Where, as here, there are material facts in the case, depending upon the weight of evidence and the credibility of witnesses, which are in dispute, and the proper inferences to be drawn from the evidence are not certain, necessary or undisputed, a verdict cannot be lawfuly directed.

Nor can the direction of a verdict be supported upon the other ground relied upon by the trial judge. That ground rests upon the assumption that Joseph Dallas made a contract with the common council of which he was member to furnish the teams to do the work for which suit is brought.

Such an contract is forbidden by section 32 of the Crimes act, which provides as follows:

"Any member of any board of chosen freeholders, or any township committee, or any board of education in any school district, or any board of aldermen or common council in any city, or any board of commissioners of any county, township, city, town or borough in this state, who shall be directly or indirectly concerned in any agreement or contract for the construction of any bridge or building of any kind whatsoever, or any improvement whatever to be constructed or made for public use or at the public expense, or shall be a party to any contract or agreement, either as principal or surety, between the county, township, city, town, borough or school district, as the case may be, and any other party, or who shall be directly or indirectly interested in furnishing any goods, chattels, supplies or property of any kind whatsoever to or for the county, township, city, town, borough or school district, the contract or agreement for which is made or the expense or consideration of which is paid by the board, council or committee of which said member is a part, shall be guilty of a misdemeanor." *Pamph. L.* 1898, *p.* 803, as amended, *Pamph. L.* 1901, *p.* 393, and *Pamph. L.* 1907, *p.* 292.

It was contended in the court below—and the contention prevailed—that notwithstanding the statute there could be a recovery upon the *quantum meruit,* where, as here, the work had been performed.

Such is not the law. On the contrary, it is settled by the great weight of authority that where by statute it is made a misdemeanor for any member of city council to be directly or indirectly concerned in any agreement or contract for any improvement at public expense, or to be directly or indirectly interested in furnishing any goods, supplies or property of any kind to the city, the city is not liable even when by the execution of the prohibited contract benefit has accrued to it. *Smith* v. *Albany,* 61 *N. Y.* 444; *Berka* v. *Woodward,* 125 *Cal.* 119; *West* v. *Berry,* 98 *Ga.* 402; *Dwight* v. *Palmer,* 74 *Ill.* 295; *Winchester* v. *Frazier* (*Ky.,* 1897), 43 *S. W. Rep.* 453; *Stone* v. *Bevans,* 88 *Minn.* 127; *Milford* v. *Milford Water Co.,* 124 *Pa. St.* 610; *Brazil* v. *McBride,* 69 *Ind.* 244;

*Goodrich* v. *Waterville,* 88 *Me.* 39; *Seaman* v. *Cap-Au-Gris Levee Dist.,* 219 *Mo.* 1; *Independent School Dist. No. 5* v. *Collins,* 15 *Idaho* 535; *Wilson* v. *Otoe County,* 71 *Neb.* 435; *Antigo Water Co.* v. *Antigo,* 144 *Wis.* 156.

The reason for the rule is apparent. The common council, of which Joseph Dallas was a member, were the agents of the city. Each member thereof was under an obligation of absolute loyalty to the interests of the city. That prohibited each member from entering into any arrangement with his associates by which his individual interest could come in conflict with the interests of his constituents who were entitled exclusively to such an exercise of his caution and judgment in their behalf, both in the making and the complete execution of bargains concerning their business, as an ordinarily prudent man would exercise in his own business. It follows, therefore, that a member of common council could not properly bargain with himself and thus become both employer and employe. The purpose and effect of the statute was to prohibit and punish such conduct upon the part of members of the governing bodies of municipalities of this state. Courts are instituted to carry into effect the laws. They cannot become auxiliary to the consummation of violations of law. And so it has been held with practical unanimity that in such circumstances, since an express promise to pay is *ultra vires* and unlawful, the law will not raise an implied promise. In our own state substantially the same principle is illustrated in the cases collected in the opinion in *Bourgeois* v. *Freeholders of Atlantic,* 53 *Vroom* 82.

The judgment will be reversed and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, VOORHEES, MINTURN, KALISCH, BOGERT, VREDENBURGH, CONGDON, WHITE, TERHUNE, HEPPENHEIMER, JJ. 15.