Theodore R. WEST and Grace Goode, Appellants,

v.

Ira K. WITSCHNER et al., Respondents.

No. 56301.

Supreme Court of Missouri, Division No. 2.

July 17, 1972.

---

Claude L. Schenck, Blue Springs, for appellants.

Lynn B. Nelson, William H. Ergovich, Kansas City, for respondents.

HOUSER, Commissioner.

This is the second appeal in a four-count suit in equity against Ira K. Witschner and J. J. Filsinger and wife. In Count I Theodore West sought to set aside a deed. In Count II Grace Goode sought to set aside a decree in a partition action filed by Witschner against her. (Witschner's cause of action was based upon a chain of title one link of which was the deed questioned in Count I.) In Counts III and IV Grace Goode sought actual and punitive damages against Witschner. Following trial before the judge of Division 9 of the Circuit Court

of Jackson County plaintiffs lost on all counts. They appealed to this Court. The evidence introduced at the original hearing was fully developed in the opinion written on that appeal, West v. Witschner, Mo.Sup., 428 S.W.2d 538, in which we upheld the trial court's finding on Count I that West failed to prove fraud on the part of Witschner's agent in procuring the deed, but reversed the judgment on Count I and remanded the cause for a new trial in order that the parties might fully develop evidence on the issue whether the deed was signed in blank and whether the Wests acknowledged the deed before the notary public whose name appears in the acknowledgment; upheld the trial court's finding on Count II that Witschner did not fraudulently procure the partition judgment and that Grace Goode's interest was not purchased for an inadequate consideration, but reversed the judgment on Count II and remanded the cause for a new trial for the same reason and purpose for the remand of Count I; affirmed the trial court's judgment on Counts III and IV, and ordered that the portions of the judgment affirmed be held in abeyance pending final disposition of the cause. On remand evidence pro and con was introduced on the two questions remaining in the case, i. e., whether the deed was signed in blank, and whether it was acknowledged. The court ruled that plaintiff West failed to establish that the deed was signed in blank but that it had been established by clear, cogent and convincing evidence that the Wests did not appear before a notary public to acknowledge execution of the deed; ordered that plaintiff West take nothing by his suit, except that the deed be stricken from the records of the recorder of deeds for want of a valid acknowledgment; and entered judgment that plaintiff Goode take nothing by Counts II, III and IV. Plaintiffs have appealed.

At the second trial William J. Pine and Betty Ann Wilson, both of whom were referred to in our original opinion, testified. Pine testified that he and Betty Ann Wilson went to the home of the Wests, at which place he prepared the deed, the geneology and the receipt, all in his own handwriting, all at the same time and in the presence of the Wests. He stated positively that the deed was complete in all respects and all of the blanks in the printed form were filled in by him, including names of grantees and legal description of the property, before it was signed. He testified that Betty Ann Wilson waited in the automobile, parked in front of the West house, until the papers were ready, at which time she was called into the house, introduced to the Wests, and that she then and there took the acknowledgment of West and his wife to the deed. After so testifying Pine changed his testimony and stated that he wrote the deed before he went to the West house. Then he expressed uncertainty about the matter. These changes and modifications of his testimony were made after it became evident to him that the deed was dated December 17 and the acknowledgment was dated December 18. When cross-examined about his positive testimony that the blanks were all filled in before signing he stated he couldn't remember, but that he assumed, and was sure, that this was so. When asked to explain the fact that the beginning words of the legal description ("An undivided one-half interest in the") were crowded in between two lines as if interlined, he could not tell for sure but suggested that he may have thought about its being a one-half interest and "then put it in afterwards," insisting however that these words were inserted before the grantors signed the deed. He agreed that the consideration actually paid may have been $150. The receipt was for $200.

Betty Ann Wilson testified by deposition in 1966 that she had no recollection of having taken the acknowledgment of the Wests at their home, and did not know whether they appeared before her at her office or their home. At the second trial she appeared in person and testified positively to the contrary that she remembered going to 2438 College Street in an automobile with

Mr. Pine; that she waited in the automobile; that Mr. Pine came out and got her when he was ready for the Wests to sign the deed; that she entered the house, was introduced to the Wests, who signed the deed before her, and that she took their acknowledgment at that time and place.

For plaintiffs Charlene Betty Alexander (formerly the wife of plaintiff West) testified positively at both trials that Pine came to their home alone; that no one was with him; that no one waited in the automobile; that the young lady she saw coming out of the courtroom after testifying (Betty Ann Wilson) was not at the West home that day, and that Charlene had never seen her. She reiterated her testimony given at the first trial that the warranty deed form was blank, except for the printed matter and her then husband's signature, when it was presented to her for signature. Plaintiffs offered to introduce evidence of three unsatisfied judgments against Pine in cases involving fraudulent practices but these were excluded as an improper method of impeachment. Three lawyers, including plaintiff's counsel, were permitted to testify that the general reputation of William J. Pine for truthfulness, honesty and fair dealing in the community was bad.

■ While as indicated in our original opinion we ordinarily defer to the findings of the trial judge in situations of this kind where the evidence is conflicting, we are not bound by the findings below. It is our duty to make our own determination of the facts on the record, de novo, on this review.

■ We have reviewed the evidence given at both trials and have come to the same conclusion reached by the trial judge on the second issue tried at the second trial, namely, that the Wests did not appear before Notary Public Betty Ann Wilson or any other notary public or officer to acknowledge execution of the purported deed. We find that Betty Ann Wilson affixed her signature and seal to the paper the day after the Wests signed it, and did so out of the presence of the Wests.

■ On the first issue, whether the printed warranty deed form was signed in blank, we have concluded that the trial judge's finding that plaintiffs failed to establish this fact is clearly erroneous. The testimony of Charlene Betty Alexander on this issue is clear, consistent, and credible. At the time of both hearings she was divorced from Theodore R. West and therefore had no personal interest in the matter. She testified with assurance that she opened the folded paper, looked at its contents, saw only the printed matter and the signature of her husband; that there was nothing filled in, nothing on it, no writing; that there was no [documentary] stamp; that it was a blank deed; that the rest of the paper was blank. We consider that her testimony establishes the fact. Theodore R. West's testimony sheds some additional light on this issue. He testified that he signed the paper without unfolding it, and saw nothing but the bottom fourth of the paper, but that at the time he signed there was no handwriting on the bottom fourth, whereas the words "them," "they," and "his" and the letter "y" after the printed word "part" appeared in Pine's handwriting on the bottom fourth, when the paper was recorded.

To reach the conclusion that the warranty deed form was filled in and completed in all respects when signed the testimony of Pine and Wilson would have to be accepted. Pine testified that his business is real estate, investments; that he deals principally in "distress property," property in estates, in a bad physical condition, on which taxes are delinquent, fire-damaged property, vacant ground, hills, hollows, "something that is not too salable to the general public"; that he buys and sells. Formerly licensed as a real estate agent, he was not licensed at the time he testified. He claimed that his license had lapsed for nonpayment of fees. He bears a bad reputation for truthfulness, honesty and fair dealing. His testimony was inconsistent, indefinite and un-

convincing. When asked about what investigation he made to ascertain who owned the property he testified that he checked the records at the courthouse "as to who the heirs were," but the record indicates that there was no administration on the estate of Samantha Burkhead, deceased, the common source of title, from which he could have ascertained heirship. A suspicious, unexplained circumstance is the fact that Pine paid West $150 but took a receipt for $200. Pine had an interest in the matter, personally and as a long-time business associate of Witschner. He testified that the notary was present and took the acknowledgment but the trial judge found that Betty Ann Wilson did not take the acknowledgment, thereby indicating disbelief in Pine's testimony that she performed that act, and we perceive no better reason to accept Pine's testimony that he filled in the blanks before signature. Betty Ann Wilson's testimony given by way of deposition in 1966 was inconsistent with her testimony at the second trial and, as pointed out by the trial judge, she did not satisfactorily reconcile the difference. The trial judge rejected her testimony about being present at the home of the Wests and taking their acknowledgment, and we see no better reason to accept her testimony that the blanks were completely filled in before signature.

■ In sum, we now specifically find from all of the evidence at both trials that the purported warranty deed was signed in blank, not only as to names of grantees, but also as to legal description and all other handwriting now appearing on the face of the pretended deed, other than grantors' signatures; that execution of the purported deed was never acknowledged before a notary public; and that the blanks were filled in by William J. Pine and the notary's certificate attached after the paper was signed, without authority from grantors. Accordingly, we declare the deed void, under the authorities cited and quoted from in our first opinion.

We further find that the defendants Filsinger, although duly served with process, did not appear but defaulted; that personal service was had upon defendant Ira K. Witschner, and that he filed an answer and appeared in person and by attorney.

Therefore, the judgment of October 23, 1970 on Counts I and II is reversed and the cause is remanded with directions to enter final judgment as follows:

On Count I: For plaintiff West and against all three defendants, setting aside and cancelling the purported warranty deed dated December 17, 1963 from Theodore R. West and wife to J. J. Filsinger and ordering that it be stricken from records of the Recorder of Deeds of Jackson County in Book B-5659 at page 45, and awarding plaintiff West his costs on Count I.

■ On Count II: For plaintiff Goode and against all three defendants, setting aside and declaring void the decree of the Circuit Court of Jackson County, Division 6, dated September 8, 1964 decreeing partition of the real estate in question in the case of Witschner v. Goode, Case No. 660309, and awarding plaintiff Goode her costs on Count II.

On Counts III and IV: For defendant Witschner and against plaintiff Goode, awarding defendant Witschner his costs on said counts.

■ It having been determined in the opinion on the first appeal that this purported deed was not fraudulently obtained, the purchaser of property whose deed is cancelled ordinarily being entitled to recover what he paid for the property, Swain v. Maxwell, 355 Mo. 448, 196 S.W.2d 780 [20], and plaintiff West having specifically invoked the equity jurisdiction of the court thus indicating his willingness to make whatever restitution the case requires, Githens v. Butler County, 350 Mo. 295, 165 S.W. 2d 650[10], the trial court is directed to make the effective date of the final judg-

ment entered on Counts I and II conditional upon the deposit in the registry of the circuit court of the sum of $150 for the benefit of the grantees named in the purported warranty deed.

STOCKARD, C., concurs.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.